AO 91 (Rev. 11/11) Criminal Complaint                          Trial Attorney Sarah Finch, (202) 550-2879

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANIEL J. ROBINSON | CASE NUMBER: 26 CR 307<br><br>**UNDER SEAL** |

**CRIMINAL COMPLAINT**

**FILED**
TD
6/18/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Count One

On or about September 6, 2024, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant DANIEL J. ROBINSON violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1347 | did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of a health care benefit program, as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, by causing to be submitted to CountyCare a claim for the purported provision of behavioral health counseling and therapy services to B.S., when such services were not provided. |

Count Two

On or about July 15, 2024, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant DANIEL J. ROBINSON violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1957 | did knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000, namely, a transfer of funds in the amount of $500,000 from the account ending in x6017 at Bank of America to Account x77U73 at Merrill Lynch, such property having been derived from a specified unlawful activity, namely, health care fraud, in violation of Title 18, United States Code, Section 1957. |

This criminal complaint is based upon these facts:
 X  Continued on the attached sheet.

Digitally signed by CURT
HARALSON
Date: 2026.06.18 09:26:06 -05'00'

CURT HARALSON
Special Agent, Federal Bureau of Investigation

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: June 18, 2026  10:15am

*Judge's signature*

City and state: Chicago, Illinois

Albert Berry III, U.S. Magistrate Judge
*Printed name and title*

1

UNITED STATES DISTRICT COURT )

NORTHERN DISTRICT OF ILLINOIS )

**<u>AFFIDAVIT</u>**

I, Curt Haralson, being duly sworn, state as follows:

1.    I am a Special Agent with the Federal Bureau of Investigation and have been so employed since approximately March 2015. As part of my duties as an FBI Special Agent, I investigate criminal violations relating to financial fraud and other white collar crime, including health care fraud offenses. Through my training and experience, I have become familiar with the methods that health care providers and others use to commit health care fraud offenses and the techniques used to investigate those offenses – including consensual monitoring, surveillance, data analysis, and the interviewing of witnesses and others who have knowledge of fraud perpetrated by health care providers and others. I have participated in the execution of multiple federal search warrants and arrests.

2.    This affidavit is submitted in support of a criminal complaint alleging that DANIEL J. ROBINSON ("ROBINSON") has committed the offenses of (a) health care fraud, in violation of Title 18, United States Code, Section 1347, and (b) money laundering, in violation of Title 18, United States Code, Section 1957. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging ROBINSON with health care fraud and money laundering, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I

1

believe are sufficient to establish probable cause to believe that ROBINSON committed the offenses alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, and information I have received from various individuals, business records, and searches of public and governmental databases.

## I.    BACKGROUND

### A.    Summary

4. As set forth below, the FBI and the United States Department of Health and Human Services, Office of Inspector General ("HHS-OIG"), are investigating a scheme to defraud the Illinois Medicaid program through the submission of fraudulent claims for services not rendered. The target of the investigation, ROBINSON, is conducting the scheme through ODA SOLUTIONS, INC. ("ODA Solutions"), a methadone clinic in Oak Lawn, Illinois. ODA Solutions is registered in IMPACT[1] as a Behavioral Health Clinic (NPI: 1174222541) and a Substance Abuse Treatment Center (NPI: 1487350815).[2] Providers offering both substance abuse services and mental health services from the same site may not utilize the same NPI

---

[1] IMPACT stands for Illinois Medicaid Program Advanced Cloud Technology. It is the Medicaid reimbursement system used to enroll individual providers. All agency and individual providers must enroll in IMPACT to become an eligible Medicaid provider. More information regarding IMPACT can be found at https://www.dhs.state.il.us/page.aspx?item=84345 (last accessed June 17, 2026).

[2] NPI stands for National Provider Identifier. It is a unique identification number for covered health care providers. Covered health care providers must use NPIs in administrative and financial transactions adopted under HIPAA. More information regarding NPIs can be found at https://www.cms.gov/regulations-and-guidance/administrative-simplification/nationalprovidentstand (last accessed June 17, 2026).

number for billing substance use disorder services and mental health services. Mental health services must be billed under a separate NPI number from the substance use disorder services.[3]

5.     From approximately December 11, 2023, to the present, ODA Solutions submitted fraudulent claims to Illinois Medicaid managed care organizations, including CountyCare Health Plan, Blue Cross and Blue Shield of Illinois ("BCBS-IL"), Meridian Health Plan, Molina Healthcare, and Aetna Better Health (collectively, the "MCOs") for behavioral health counseling and therapy services that were never provided. As of May 31, 2026, ODA Solutions has been paid at least approximately $75,171,733 from the MCOs for behavioral health counseling and therapy services.

6.     Based on the evidence obtained through this investigation, a substantial majority of the behavioral health counseling and therapy services that ODA Solutions billed to the MCOs were never provided. As discussed in more detail below, despite banking, regulatory, and payroll records showing that ODA Solutions never had more than approximately 16 providers on staff, for over two years, ODA Solutions regularly submitted claims to the MCOs for 500 or more hours of counseling and therapy services per day, well in excess of what ODA Solutions' providers could render in a single day, even if all providers were working 24 hours per day. In response to requests from the MCOs for medical records and lists of rendering providers, ODA

---

[3] *See* https://countycare.com/wp-content/uploads/IAMHP_Billing-Manual_v27.0-3.pdf (last accessed June 17, 2026).

3

Solutions provided dozens of fake visit notes and lists of providers that included dozens of individuals who never received any payment from ODA Solutions. Many of the fake visit notes purportedly documented outpatient therapy sessions that purportedly occurred on dates when the patients in question were actually hospitalized and could not possibly have received the services described in the notes. Law enforcement agents and the MCO investigators interviewed several purported ODA Solutions patients, each of whom confirmed that they received none of the dozens of hours of purported therapy and counseling services that ODA Solutions billed to the MCOs. Additionally, agent review of 24-hour video surveillance of ODA Solutions for a two-week period from April 20 to May 2, 2026, confirmed that no more than 45 patients entered ODA Solutions on a single day and the vast majority of patients stayed for no longer than 15 minutes. Based on claims ODA Solutions submitted to the MCOs for purported dates of service during a portion of that timeframe, ODA Solutions claimed that more than 180 patients each received at minimum one hour of therapy or counseling services on five days during that timeframe.

7.     As also discussed in further detail below, ROBINSON is the founder, owner, and operator of ODA Solutions. Based on bank records, ROBINSON and Individual A are the sole signatories on the ODA Solutions bank accounts through which ODA Solutions received all payments from managed care organizations, including the MCOs, and made all of its payroll payments to providers, and all of its payments to billers. Based on records provided by ODA Solutions' billing software

4

vendor, ROBINSON set up ODA Solutions' billing account, provided third-party billers with access to the billing account, retained access to the account, was able to see the fraudulent claims that ODA Solutions was submitting to the MCOs, and communicated with the software vendor about the high volume of claims ODA Solutions was submitting through the account. Based on emails provided by BCBS-IL and records received pursuant to a court order issued under 18 U.S.C. § 2703(d), ROBINSON appears to have been involved in the preparation of fake medical records and lists of providers that were submitted to BCBS-IL by ODA Solutions' chief compliance officer.

8. Over the course of just two years, from the ODA Solutions bank account (which was funded almost exclusively with fraudulently obtained payments from the MCOs), ROBINSON diverted over $27,356,000 to brokerage accounts, $10,133,070 to a car dealership he set up with Individual A, $4,109,384 for real estate purchases and home improvements, $1,332,167 for jewelry, watches, and other luxury items, and $616,022 for vehicles. ODA Solutions' massive profit margins and ROBINSON's massive distribution of fraud proceeds for non-business purposes were made possible by the fact that ROBINSON was not paying any providers to render the vast majority of the services ODA Solutions billed to managed care organizations.

B. **Background Information on Medicaid**

9. Based on my training and experience and information provided to me during the course of this investigation, I know that the Illinois Medicaid program ("Medicaid") is a federal and state funded health care program providing benefits to

individuals and families who meet specified financial and other eligibility requirements, and certain other individuals who lack adequate resources to pay for medical care. The Centers for Medicare and Medicaid Services ("CMS"), a federal agency within HHS, is responsible for overseeing the Medicaid program in participating states, including Illinois. Individuals who received benefits under Medicaid are referred to as Medicaid "beneficiaries."

10.     Medicaid covers the costs of certain medical services, products, and benefits, including prescription drug benefits, for Medicaid beneficiaries. Generally, Medicaid covers part or all of the costs of prescription drugs dispensed to a Medicaid beneficiary if, among other requirements, the prescription drugs are medically necessary and ordered by a physician.

11.     Medicaid pays for covered services either through what is called Medicaid "fee-for-service" or through Medicaid managed care organizations. In Illinois, the managed care organizations that provide health insurance to Medicaid beneficiaries include the MCOs.[4]

12.     Medicaid and Medicaid managed care organizations are "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

C.     Billing and Procedure Codes

13.     Based on my training and experience and information provided to me during the course of this investigation, I know that Medicaid uses the Healthcare

---

[4] More information regarding Illinois' Medicaid services through managed care organizations can be found at https://hfs.illinois.gov/medicalclients/managedcare.html (last visited, June 17, 2026).

6

Common Procedure Coding System ("HCPCS") to process health care claims. HCPCS consists of two principal subsystems, referred to as level I and level II. Level I of the HCPCS is comprised of a numeric coding system maintained by the American Medical Association called the Current Procedural Terminology ("CPT"). The CPT is a uniform coding system that physicians and health care professionals use to identify medical services and procedures furnished. Level II of the HCPCS is a standardized coding system used primarily to identify products, supplies, and services not included in the CPT codes such as ambulance services, durable medical equipment, prosthetics, orthotics, and supplies when used outside a physician's office.

14. The procedures and services represented by the CPT and HCPCS codes are health care benefits, items, and services within the meaning of 18 U.S.C. § 24(b). They include codes for behavioral health evaluation, counseling, therapy, and other services. Health care providers use CPT and HCPCS codes to describe the services rendered in their claims for reimbursement to health care benefit programs.

15. Health care benefit programs, including Medicaid, use these codes to understand and evaluate claims submitted by providers and to decide whether to issue or deny payment. Each health care benefit program establishes a fee or reimbursement level for each service described by a CPT or HCPCS code.

16. Health care providers often seek reimbursement from insurance carriers on CMS Form 1500. On the form, the provider identifies itself by its Provider Identification Number ("PIN") or Tax Identification Number ("TIN"), identifies the beneficiary who received the services, describes the illness or injury that makes the

7

services medically necessary, and identifies the services provided by CPT and HCPCS codes, among other things. The insurance carrier will issue a payment or denial in response to the information contained in each CMS Form 1500.

17. The Illinois Department of Healthcare and Family Services ("IL HFS") issues a Handbook for Providers of Medical Services as well as a Managed Care Manual, both of which are publicly available and offer day-to-day operating instructions, policies, and procedures based on statutes and regulations, guidelines, models, and directives for Medicaid providers in Illinois. The IL HFS provider fee schedule refers providers to the same HCPCS codes for guidance on how to bill for services.[5]

18. Based on Illinois Medicaid's and the MCOs' claims data, claims identifying the following HCPCS codes recognized by Medicaid were submitted for services purportedly provided by ODA Solutions between on or about December 11, 2023 through on or about March 5, 2026:

    a. HCPCS Code H0002: Behavioral Health Screen to Determine Eligibility for Admission to Treat Program[6]

    b. HCPCS Code H0004: Behavioral Health Counseling and Therapy - 15 minutes[7]

---

[5] Further detail regarding the IL Medicaid fee schedule and applicable HCPCS codes can be found at https://hfs.illinois.gov/medicalproviders/medicaidreimbursement/suprfeeschedule.html (last visited June 17, 2026).

[6] Further detail regarding this HCPCS code can be found at https://hcpcs.codes/h-codes/H0002 (last visited June17, 2026).

[7] Further detail regarding this HCPCS code can be found at https://hcpcs.codes/h-codes/H0004 (last visited June 17, 2026).

      c.     HCPCS Code H0005: Alcohol &/OR Drug Service; Group Counseling by Clinician[8]

      d.     HCPCS Code H2000: Comprehensive Multidisciplinary Evaluation[9]

      e.     HCPCS Code H2014: Skilled Training and Development - 15 minutes[10]

      f.     HCPCS Code H2015: Comprehensive Community Support Service -15 minutes[11]

      g.     HCPCS Code T1016: Case Management -15 minutes[12]

      h.     HCPCS Code T1019: Personal Care Services - 15 minutes[13]

## II. FACTS SUPPORTING PROBABLE CAUSE

19. In summary, and as described more fully below, the investigation has shown that ODA Solutions has submitted hundreds of thousands of claims to the MCOs seeking reimbursement for behavioral and health counseling and therapy services that were not performed, as part of a scheme to defraud Medicaid. As a result of this scheme, ODA Solutions received millions of dollars into Bank of America

---

[8] Further detail regarding this HCPCS code can be found at https://hcpcs.codes/h-codes/H0005 (last visited June 17, 2026).

[9] Further detail regarding this HCPCS code can be found at https://hcpcs.codes/h-codes/H2000 (last visited June 17, 2026).

[10] Further detail regarding this HCPCS code can be found at https://hcpcs.codes/h-codes/H2014 (last visited June 17, 2026).

[11] Further detail regarding this HCPCS code can be found at https://hcpcs.codes/h-codes/H2015 (last visited June 17, 2026).

[12] Further detail regarding this HCPCS code can be found at https://hcpcs.codes/h-codes/t1016 (last visited June 17, 2026).

[13] Further detail regarding this HCPCS code can be found at https://hcpcs.codes/h-codes/t1019 (last visited June 17, 2026).

Account x6017.[14] The fraud proceeds were then transferred to other accounts and used to purchase luxury items, including cars, boats, and diamonds. As discussed in more detail below, based on financial and other business records obtained through subpoenas, there is probable cause to believe that, on or about September 6, 2024, ODA Solutions submitted a claim to CountyCare for two hours of behavioral health counseling and therapy services purportedly provided to beneficiary B.S. on or about August 24, 2024, for which CountyCare paid ODA Solutions $242.08. Based on records from Hospital A, beneficiary B.S. did not receive any counseling and therapy services from ODA Solutions on or about August 24, 2024, because he was admitted to Hospital A on or about August 19, 2024 after suffering a gunshot wound to his head and was declared brain dead at Hospital A on or about August 25, 2024. Further, on or about February 3, 2025, ROBINSON engaged in a monetary transaction of a value greater than $10,000 which was derived from specified unlawful activity – specifically, the ODA Solutions health care fraud scheme – when ROBINSON transferred $500,000 from Account x6017 to Merrill Lynch account x77U73, held in the name of ODA Solutions.

---

[14] According to records obtained by law enforcement, Account x6017 is held in the name of "ODA SOLUTIONS, INC" and was opened on or about January 24, 2023. The records identify Daniel J. Robinson as the president of ODA Solutions and the signatory for Account x6017. Records reveal that on or about February 7, 2025, Individual A became a co-signatory on Account x6017, and Individual A is listed as Vice President of ODA Solutions.

**A. ODA Solutions Submitted Hundreds of Thousands of Fraudulent Claims to the MCOs for Behavioral Health Counseling and Therapy Services That Were Never Rendered**

    1. <u>ODA Solutions Submitted Claims for Hundreds of Hours of Services that Were Impossible for the Providers on ODA Solutions' Payroll to Provide</u>

        *a. Analysis of ODA Solutions Payroll Records*

20. Analysis of Account x6017 reveals regular monthly payments to Intuit Inc. for payroll at ODA Solutions. Intuit records obtained by law enforcement show that from June 2024 through March 2026, ODA Solutions had no more than three employees, including ROBINSON and Individual C, who was identified to Intuit as an accountant and tax preparer.[15] The Intuit records are largely consistent with records of ODA Solutions reports to the Illinois Department of Employment Security, which law enforcement obtained through subpoena and which showed that ODA Solutions reported having one to three employees from October 2022 through October 2025. Intuit records further showed that from August 2024 through March 2026, ODA Solutions' payroll included no more than twenty-one independent contractors, five of whom were a lawyer, ODA Solutions' compliance officer (Individual B), a maintenance company, a management company associated with Individual D (a female, who, based on vendor receipts obtained via subpoena, shares a home address in Palos Park, Illinois, with ROBINSON), and NPA Consulting Group Inc., an entity that based on bank records and Illinois Secretary of State records, was owned and controlled by ROBINSON.

---

[15] Intuit records include "employee details" for a fourth individual but do not reflect any payments to that individual.

21. As discussed further below, the MCO records show that ODA Solutions occasionally provided lists of its rendering providers to BCBS-IL in response to requests from BCBS-IL. The lists also included ODA Solutions' lawyer and compliance officer (Individual B) but identified them as a lawyer and compliance officer, rather than as providers. Of the three employees and sixteen independent contractors identified on the payroll records provided by Intuit, a total of 12 were identified as providers on the lists ODA Solutions provided to BCBS-IL.

22. Intuit payroll records also show that ROBINSON was the primary recipient of ODA Solutions' payroll payments. For example, Intuit records show that in July 2025, ODA Solutions paid a total of $95,846.12 to a total of three employees, $80,000 of which was paid to ROBINSON. That same month, ODA Solutions made a total of approximately $139,373.80 in payments to approximately 16 contractors, of which only approximately $72,147.28 was paid to a total of 10 contractors that ODA Solutions identified as providers on submissions to the MCOs. Of the remainder, approximately $30,000 was paid to ROBINSON's NPA Consulting Group Inc. entity, approximately $16,000 was paid to an entity associated with Individual B, ODA Solutions' compliance officer, approximately $12,000 was paid to the management company associated with Individual D, approximately $5,000 was paid to an attorney, and approximately $4,226.52 was paid to the maintenance company.

23. According to the Intuit records, the $80,000 in payments to ROBINSON in July 2025 were consistent with ROBINSON's $20,000 per-week salary from July 2024 through March 2026. Intuit records reflect a total of approximately $1,810,000

in gross salary payments to ROBINSON from June 2024 through March 2026. The total gross payments to ODA Solutions' two other employees during that period was approximately $323,768. Likewise, Intuit records show that ODA Solutions made payroll payments of approximately $7,500 to NPA Consulting Group Inc. approximately every week from August 2024 through March 2026, for a total of approximately $637,500 during that time period.[16]

24. As discussed further below, bank records show ROBINSON used NPA Consulting Group to make a total of approximately $6,440 in payments to approximately three individuals identified as providers on the lists ODA Solutions provided to BCBS-IL, all of which were made prior to on or about May 11, 2024.

b. *Analysis of Medicaid Claims Data*

25. The MCOs' billing data shows that ODA Solutions regularly submitted over 400 claims for hundreds of Medicaid beneficiaries on any given day.[17] The chart below shows claims ODA Solutions submitted to the MCOs for HCPCS codes H0002, H0004, H2000, H2014, H2015, and T1016 (each of which is billed in 15-minute increments and is for individual counseling or therapy services) for dates of service in July 2025. On average, for each date of service in July 2025 for which ODA

---

[16] From August 2024 through March 2025, Intuit records appear to have incorrectly identified NPA Consulting Group Inc. as "NPA Solutions Inc." In addition to the scheduled payroll payments identified in the Intuit records, bank records show the entity received hundreds of thousands of dollars in additional, unscheduled payments from ODA Solutions bank accounts.

[17] This analysis relied upon claims data from Aetna, BCBS-IL, CountyCare, and Molina. Claims data from Meridian has yet to be included.

Solutions submitted any claims, ODA Solutions claimed to have provided approximately 762.4 hours of individual counseling and therapy services.

| Service Date | No. of Bene-ficiaries | Claims for H0002 | Claims for H0004 | Claims for H2000 | Claims for H2014 | Claims for H2015 | Claims for T1016 | Total Claims | Total Hours of Service |
|---|---|---|---|---|---|---|---|---|---|
| 7/1/2025 | 237 | 1 | 221 | 0 | 233 | 0 | 0 | 455 | 908 |
| 7/2/2025 | 290 | 0 | 247 | 5 | 0 | 0 | 156 | 408 | 654 |
| 7/3/2025 | 292 | 1 | 291 | 1 | 0 | 0 | 118 | 411 | 760.5 |
| 7/5/2025 | 308 | 1 | 133 | 0 | 233 | 162 | 0 | 526 | 663 |
| 7/7/2025 | 296 | 1 | 234 | 3 | 0 | 162 | 0 | 400 | 793.75 |
| 7/8/2025 | 274 | 0 | 236 | 0 | 275 | 0 | 0 | 511 | 1019.5 |
| 7/9/2025 | 294 | 0 | 250 | 1 | 0 | 0 | 165 | 416 | 666.75 |
| 7/10/2025 | 293 | 0 | 251 | 0 | 0 | 0 | 166 | 417 | 772 |
| 7/11/2025 | 235 | 1 | 113 | 0 | 122 | 0 | 0 | 236 | 469.5 |
| 7/12/2025 | 311 | 0 | 127 | 0 | 236 | 124 | 42 | 529 | 659 |
| 7/14/2025 | 299 | 0 | 239 | 2 | 105 | 61 | 1 | 408 | 811.5 |
| 7/15/2025 | 285 | 0 | 243 | 0 | 285 | 0 | 0 | 528 | 1054.5 |
| 7/16/2025 | 305 | 0 | 262 | 0 | 0 | 0 | 170 | 432 | 694 |
| 7/17/2025 | 305 | 0 | 262 | 0 | 0 | 0 | 170 | 432 | 799.5 |
| 7/18/2025 | 243 | 1 | 242 | 0 | 0 | 0 | 0 | 243 | 482 |
| 7/19/2025 | 318 | 0 | 135 | 0 | 244 | 170 | 0 | 549 | 687 |
| 7/21/2025 | 306 | 0 | 244 | 0 | 0 | 170 | 0 | 414 | 826 |
| 7/22/2025 | 284 | 0 | 244 | 0 | 284 | 0 | 0 | 528 | 1052 |
| 7/23/2025 | 306 | 0 | 263 | 1 | 0 | 0 | 170 | 434 | 696.75 |
| 7/24/2025 | 306 | 0 | 261 | 0 | 0 | 0 | 171 | 434 | 804 |
| 7/25/2025 | 244 | 0 | 244 | 0 | 0 | 0 | 0 | 244 | 487.5 |
| 7/26/2025 | 320 | 0 | 135 | 3 | 244 | 171 | 0 | 553 | 689.25 |
| 7/28/2025 | 306 | 0 | 241 | 0 | 0 | 172 | 0 | 413 | 824 |
| 7/29/2025 | 281 | 2 | 241 | 0 | 280 | 0 | 0 | 523 | 1044 |
| 7/30/2025 | 307 | 0 | 264 | 0 | 0 | 0 | 172 | 436 | 700 |
| 7/31/2025 | 306 | 0 | 263 | 0 | 0 | 0 | 172 | 435 | 805.5 |
| **DAILY AVERAGE** | **290.4** | **0.3** | **226.4** | **0.6** | **97.7** | **45.8** | **64.3** | **435.2** | **762.4** |

14

26.     Assuming ODA Solutions providers were each rendering eight hours of individual therapy and counseling services per day, ODA Solutions would have needed to have had approximately 95 providers on staff to complete the services that were described in the claims in July 2025. Even assuming providers were rendering therapy and counseling services 24 hours per day with no breaks, for days on end, this volume of billing would have required ODA Solutions to have had 31 providers on staff. As discussed above, however, according to Illinois Department of Employment Security ("IDES") and ODA Solutions payroll records, during July 2025, ODA Solutions made payroll payments to only 3 employees and 16 contractors (including ROBINSON, NPA Solutions, the attorney, the management company, the compliance officer, and the maintenance company), only 10 of whom were identified as providers on lists that ODA Solutions provided to BCBS-IL.

27.     Illinois Medicaid data shows that the amount ODA Solutions billed to the MCOs in July 2025 was generally consistent with ODA Solutions' level of billing from January 2024 through December 2025. According to Illinois Medicaid data, from January 2024 through December 2025, ODA Solutions consistently billed the MCOs between one and two million dollars on a monthly basis and was paid a total of approximately $68,575,681.64 during that timeframe:

| Month of Service | Amount Billed by ODA Solutions | Amount Paid to ODA Solutions |
|---|---|---|
| January 2024 | $508,110.96 | $372,277.03 |
| February 2024 | $1,246,041.2 | $899,114.41 |
| March 2024 | $1,539,882.16 | $1,016,194.53 |
| April 2024 | $2,097,919.32 | $1,494,496.26 |
| May 2024 | $2,910,852.28 | $2,116,507.03 |
| June 2024 | $2,737,224.01 | $1,980,312.22 |

| July 2024 | $2,468,405.23 | $1,841,556.64 |
|---|---|---|
| August 2024 | $2,492,312.07 | $1,910.308.58 |
| September 2024 | $2,265,222.05 | $1,751,677.85 |
| October 2024 | $1,677,319.14 | $1,376,881.70 |
| November 2024 | $1,493,600.12 | $1,216,547.49 |
| December 2024 | $1,458,907.28 | $1,146,872.63 |
| January 2025 | $2,052,278.20 | $1,632,342.77 |
| February 2025 | $2,540,825.55 | $1,868,350.27 |
| March 2025 | $2,704,511.26 | $2,019,536.59 |
| April 2025 | $2,740,061.84 | $2,037,132.18 |
| May 2025 | $2,091,750.56 | $1,581,033.21 |
| June 2025 | $1,820,304.97 | $1,391,390.03 |
| July 2025 | $2,332,993.93 | $1,857,279.25 |
| August 2025 | $1,779,981.98 | $1,708,969.78 |
| September 2025 | $1,498,322.84 | $1,449,915.39 |
| October 2025 | $1,736,468.56 | $1,681,183.68 |
| November 2025 | $1,021,670.60 | $981,878.99 |
| December 2025 | $906,010.36 | $866,390.89 |
| **Total** | **$92,241,952.94** | **$68,575,681.64** |

2. <u>ODA Solutions Submitted Claims for Fake Outpatient Therapy and Counseling Services Purportedly Rendered on Dates When Patients Were Actually Hospitalized at Other Facilities.</u>

28. Additional analysis of Medicaid billing data shows that ODA Solutions submitted claims for outpatient behavioral and health counseling and therapy services that were purportedly performed at ODA Solutions for at least 68 beneficiaries who were staying at inpatient facilities at the time, based on claims submitted by hospitals and other inpatient facilities. For 23 of those patients, law enforcement has obtained medical records from those inpatient facilities pursuant to grand jury subpoena and has confirmed that the facilities' records also show that the patients were staying at the facilities on the dates when ODA Solutions claimed the patients were receiving outpatient services.

29.     For example, according to Hospital A records, from August 19 to August 25, 2024, beneficiary B.S. was hospitalized at Hospital A, located in Chicago, Illinois, being treated for a gunshot wound. Beneficiary B.S. died at Hospital A on August 25, 2024. According to CountyCare billing data, ODA Solutions submitted claims for reimbursement representing that it had provided beneficiary B.S. with behavioral health counseling and therapy and alcohol and drug counseling on August 20, 21, 22, 23, and 24, 2024, while beneficiary B.S. was hospitalized and being treated for a gunshot wound.  In addition, CountyCare billing data reveals that ODA Solutions submitted hundreds of claims from late 2024 through August 2025, well after beneficiary B.S. had died.

> ### 3.     ODA Solutions Submitted Fake Medical Records and Lists of Rendering Providers to the MCOs to Support Fraudulent Claims in Response to BCBS-IL Investigations.

30.     BCBS-IL's Special Investigative Department conducted a review of a subset of claims submitted by ODA Solutions on three separate occasions. Specifically, BCBS-IL requested medical records that supported the billing for the claims ODA Solutions submitted to BCBS. As discussed more fully below, the records submitted in response to BCBS-IL's requests appear to have been created solely for the purpose of responding to BCBS-IL after the request was made and were not real records about real patients.

> #### a.     *October 2024 and April 2025 Reviews of ODA Solutions' Claims.*

31.     The first review of ODA Solutions' claims began in October 2024. BCBS-IL notified ROBINSON of the claims review and requested medical records that

supported the billing ODA Solutions submitted. The BCBS-IL investigator's report regarding her review of the requested medical records indicated that, among other things, ODA Solutions: failed to submit records for over 300 dates of service; submitted claims with multiple dates of service for a single claim; and had instances on approximately 50 dates of service for which two records were submitted for the same beneficiary, date of service, CPT code, and time slot, but with different notes.

32.     On approximately April 28, 2025, BCBS-IL initiated a subsequent review of claims submitted by ODA Solutions, notified ROBINSON, and requested medical records that supported the billing ODA Solutions submitted for 25 additional beneficiaries. The BCBS-IL investigator's report regarding her review of those medical records indicated that, among other things, ODA Solutions: failed to submit documentation to support billed codes; billed under separate NPI numbers to potentially circumvent Medicaid requirements; and billed at the maximum number of units of service before preauthorization is required.

### b.      June 2025 Review of ODA Solutions' Claims

33.     On or about June 23, 2025, the Special Investigations Department at BCBS-IL initiated a third review of claims submitted by ODA Solutions. BCBS-IL notified ROBINSON of the claims review via letter sent to ODA Solutions' lawyer, ROBINSON, and Individual B and requested medical records that supported the billing ODA Solutions submitted for 28 additional beneficiaries. According to the BCBS-IL investigator's report, BCBS-IL requested records for the beneficiaries identified in the letter to ODA Solutions because an analysis of claims data showed that ODA Solutions had submitted a total of approximately 652 claims for outpatient

services purportedly rendered to the identified beneficiaries on dates when those beneficiaries were actually admitted to inpatient facilities, including hospitals, behavioral health clinics, and nursing and rehabilitation facilities.

34. According to the BCBS-IL investigator's report, on or about July 1, 2025, BCBS-IL received from ODA Solutions medical records that did not contain any signatures of the purported servicing providers. According to the report, on or about June 23, 2025, BCBS-IL issued an email to the attorney representing ODA Solutions, notifying the attorney that the records were unsigned. According to BCBS-IL records, ODA Solutions submitted the signed versions of the requested records to BCBS-IL via a cover letter dated July 22, 2025, which listed Individual B as "ODA Solutions Compliance Officer" in the signature block but bore no signature. The letter stated: "Pursuant to your request, attached are the medical records requested as well as e signatures as well as authentication for services provided by the providing members of our care coordination team. Please forgive the oversight of the omitted identifier and authentication in the last response. We have implemented a new EHR as well as a new software in order to improve compliance and keep records safe."

35. Based on my preliminary review, the medical records submitted by ODA Solutions on or about July 22, 2025, appear to be the same records previously submitted without signatures. The purported signatures on the newly produced records appear to be typed cursive signatures of the kind that can be created using Microsoft Word. According to the Intuit records, none of the individuals who

19

purportedly signed the newly produced medical records received payment from ODA Solutions.

36.     As discussed below, some of the records purport to document outpatient visits with ODA Solutions' beneficiaries that purportedly occurred on dates when, according to analysis of Medicaid claims data and the BCBS-IL investigator's report, those beneficiaries were actually in inpatient facilities. In some instances, the narrative portions of the notes appear to contain paragraphs in which the same sentence is repeated several times in a row.

37.     For example, below is an excerpt for a purported two-hour "Case Management Note" dated July 24, 2024, for Patient J.K., who, according to the BCBS-IL investigator's report, was hospitalized from July 21, 2024, through July 26, 2024 at Hospital B, which is located in Oak Lawn, Illinois.

B: The patient described difficulties with medication management, including how it contributes to emotional distress and functional limitations. The patient described difficulties with medication management, including how it contributes to emotional distress and functional limitations. The patient described difficulties with medication management, including how it contributes to emotional distress and functional limitations.

U: The patient is unclear on how to move forward in resolving issues related to medication management. They are feeling overwhelmed but receptive to guidance. The patient is unclear on how to move forward in resolving issues related to medication management. They are feeling overwhelmed but receptive to guidance. The patient is unclear on how to move forward in resolving issues related to medication management. They are feeling overwhelmed but receptive to guidance.

R: The CMM responded with compassion and structure, identifying short-term tasks and educational tools to empower the patient. The CMM responded with compassion and structure, identifying short-term tasks and educational tools to empower the patient. The CMM responded with compassion and structure, identifying short-term tasks and educational tools to empower the patient.

P: The patient agreed to complete outlined steps and participate in continued engagement with ODA Solutions. The CMM will track progress weekly. The patient agreed to complete outlined steps and participate in continued engagement with ODA Solutions. The CMM will track progress weekly. The patient agreed to complete outlined steps and participate in continued engagement with ODA Solutions. The CMM will track progress weekly

20

The note purports to bear the below-depicted electronic signature of "[Individual A] MHP SUDC":[18]



The same set of medical records for Patient J.K. also contained additional outpatient visits at ODA Solutions on July 22 and July 25, 2024, which also purportedly occurred during Patient J.K.'s inpatient hospitalization. Like the notes for the purported July 24, 2024 visit, the notes for the July 22 and July 25, 2024 visits also consisted of paragraphs containing the same sentences repeated several times in a row. The note for the July 25, 2024 visit also contained the same purported electronic signature for "[Individual A] MHP SUDC." The note for the July 22, 2024 visit contained a similarly formatted cursive electronic signature for "Ada Nicoles MHP,"[19] as shown below:

---

[18] Based on bank records obtained by law enforcement, Individual A, whose initials are J.B., is the President of Car King Auto which, according to a Google search, is located in Chicago Heights, Illinois. According to the medical records submitted by ODA Solutions to BCBS-IL in July 2025, Individual A is a mental health professional purportedly providing services at ODA Solutions. Contrary to this assertion, to date, I am not aware of any evidence that demonstrates that Individual A is a mental health professional. Based on records obtained from IDES, since 2021, Individual A has only been employed by Ettleson Hyundai, LLC.

[19] Based on a response to a grand jury subpoena, the Illinois Secretary of State has no records for Ada Nicoles.

B: The patient initiated discussion about ongoing struggles with medication management, identifying it as a major source of emotional and logistical difficulty. The patient initiated discussion about ongoing struggles with medication management, identifying it as a major source of emotional and logistical difficulty. The patient initiated discussion about ongoing struggles with medication management, identifying it as a major source of emotional and logistical difficulty.

U: The patient described confusion, frustration, or emotional discomfort surrounding medication management, and asked for more direction or structure. The patient described confusion, frustration, or emotional discomfort surrounding medication management, and asked for more direction or structure. The patient described confusion, frustration, or emotional discomfort surrounding medication management, and asked for more direction or structure.

R: The CSS validated the patient's experience and offered educational and emotional support. Concrete steps were outlined to address concerns linked to medication management. The CSS validated the patient's experience and offered educational and emotional support. Concrete steps were outlined to address concerns linked to medication management. The CSS validated the patient's experience and offered educational and emotional support. Concrete steps were outlined to address concerns linked to medication management.

P: The patient agreed to engage in the next steps and continue participating in ODA community support services. CSS will provide ongoing check-ins and adaptive planning. The patient agreed to engage in the next steps and continue participating in ODA community support services. CSS will provide ongoing check-ins and adaptive planning. The patient agreed to engage in the next steps and continue participating in ODA community support services. CSS will provide ongoing check-ins and adaptive planning.



Ada Nicoles MHP

38.     Based on my training and experience, it is unlikely that two different providers would inadvertently write and sign patient notes for the same patient containing paragraphs that consisted of the same sentence repeated several times in a row. Instead, based on the fact that the notes purportedly signed by both providers contain the same typographical errors, there is probable cause to believe that the notes for Patient J.K. were fabricated by the same person in response to the request from BCBS-IL.

        4.     **ODA Solutions Submitted Fraudulent Claims for Fake Counseling and Therapy Services Purportedly Rendered on Dates When ODA Solutions Was Under Law Enforcement Surveillance.**

39.     Beginning on April 20, 2026, law enforcement began 24-hour video

22

surveillance of the front, patient entrance at ODA Solutions. Agent review of that video surveillance reveals the following about the number of patients entering and exiting ODA Solutions:

| Date | Time of First Individual Entering the Front Door | Count of Unique Individuals Entering the Front Door | Time of Last Individual Exiting the Front Door |
|---|---|---|---|
| Mon 4/20/2026 | 6:09 AM | 45 | 11:19 AM |
| Tues 4/21/2026 | 6:02 AM | Unknown | Unknown |
| Wed 4/22/2026 | 5:58 AM | 40 | 11:00 AM |
| Thurs 4/23/2026 | 5:59 AM | 29 | 11:01 AM |
| Fri 4/24/2026 | 5:56 AM | 42 | 11:03 AM |
| Sat 4/25/2026 | 7:00 AM | 22 | 10:18 AM |
| Mon 4/27/26 | 6:00 AM | Unknown | Unknown |
| Tues 4/28/2026 | 5:55 AM | 27 | 10:51 AM |
| Wed 4/29/2026 | 6:00 AM | 34 | 10:45 AM |
| Thurs 4/30/2026 | 5:58 AM | 30 | 10:53 AM |
| Fri 5/01/2026 | 6:06 AM | 38 | 11:00 AM |

Most of these individuals observed entering ODA Solutions appeared to leave within five to fifteen minutes of entering.

40. A review of the MCO claims data for those same days reveals that ODA Solutions billed for over four times the maximum number of patients who were observed entering ODA Solutions. As shown in the chart below, the MCO claims data also reveals that ODA Solutions billed for a minimum of one hour of therapy or counseling services per patient even though the video surveillance indicates such lengthy services are not feasible, given that the majority of patients were observed staying inside at ODA Solutions for no longer than 15 minutes.

| Service Date | No. of Bene-ficiaries [20] | Claims for H0004 | Claims for H2014 | Claims for H2015 | Claims for T1016 | Total Claims | Total Hours of Service |
|---|---|---|---|---|---|---|---|
| 4/20/26 | 184 | 183 | 178 | | | 361 | 508 |
| 4/21/26 | 183 | 183 | | | | 183 | 330 |
| 4/22/26 | 186 | 185 | | | 185 | 370 | 740 |
| 4/23/26 | 186 | 186 | | 164 | 21 | 370 | 740 |
| 4/24/26 | 184 | 179 | 5 | | | 184 | 332 |
| 4/25/26 | 189 | 116 | 183 | 6 | 6 | 311 | 622 |
| 4/27/26 | 110 | 110 | 106 | | | 216 | 326 |
| 4/28/26 | 110 | 110 | | | | 110 | 220 |
| 4/29/26 | 118 | 118 | | | 117 | 235 | 470 |
| 4/30/26 | 118 | 118 | | 96 | 22 | 236 | 472 |
| 5/1/26 | 106 | 106 | | | | 106 | 212 |
| 5/2/26 | 106 | | 106 | 4 | 4 | 114 | 228 |

5.     ODA Solutions Patients Confirmed They Did Not Receive the Services That ODA Solutions Billed to the MCOs.

41.     As part of its investigation into ODA Solutions, BCBS-IL also conducted patient interviews. According to records provided by BCBS-IL, a BCBS-IL investigator interviewed Patient M.C. on January 15, 2025. Medicaid billing data reveals that ODA Solutions billed Medicaid through Blue Cross for 515 claims for behavioral health counseling and therapy services purportedly provided to Patient M.C. at ODA Solutions between January and October 2024. ODA Solutions was paid over $100,000 for those claims. Patient M.C. told the BCBS-IL investigator that she was not familiar with ODA Solutions, that Oak Lawn, Illinois was far from her home in Maywood, Illinois, and that she had never sought treatment for drug or alcohol addiction.

---

[20] Law enforcement has not yet received all the MCO data from the week of April 27, 2026.

24

42. According to records provided by BCBS-IL, a BCBS-IL investigator also interviewed Patient R.A.[21] on January 15, 2025. Medicaid billing data reveals that ODA Solutions billed Medicaid for 852 claims for behavioral health counseling and therapy services purportedly provided to Patient R.A. at ODA Solutions between June 2024 and December 2025. ODA Solutions was paid over $173,000 for those claims. Patient R.A. told the BCBS-IL investigator that he had been in inpatient alcohol treatment at DuPage County Hospital and Gateway. Patient R.A. had never heard of ODA Solutions and had not received services anywhere besides DuPage County Health and Gateway. According to BCBS-IL records, consistent with Patient R.A.'s statements, Patient R.A. had inpatient stays at Gateway from September 22-30, 2024, and from October 1-17, 2024. According to BCBS-IL records, ODA Solutions submitted claims for outpatient services purportedly provided to Patient R.A. on approximately 18 different dates during those two inpatient stays. The medical records provided by ODA Solutions on or about July 22, 2025, included notes for purported outpatient visits with Patient R.A. on approximately 10 of those dates when Patient R.A. was at Gateway, each of which contained a purported electronic signature, formatted with the same electronically-generated cursive script that appeared in the above-described notes for Patient J.K.

43. According to records provided by BCBS-IL, a BCBS-IL investigator also interviewed Patient J.K. on January 13, 2025. Medicaid billing data reveals that ODA

---

[21] Patient R.A. was convicted of damage to property in May 2000 and August 2006, violating an order of protection and involuntary manslaughter in July 2000, aggravated battery in May 2010 and June 2018, and misdemeanor battery in March 2024.

25

Solutions billed Medicaid for 481 claims for behavioral health counseling and therapy services purportedly provided to Patient J.K. at ODA Solutions between January and October 2024. ODA Solutions was paid over $95,000 for those claims. Patient J.K. told the BCBS-IL investigator that he received methadone at ODA Solutions from September to October 2024. He stopped going because the methadone was making him sick and he never received therapy or counseling from ODA Solutions. As discussed above in detail, according to BCBS-IL records, ODA Solutions submitted claims to BCBS-IL for outpatient services purportedly provided Patient J.K., as well as what appear to be fabricated visit notes, for the dates July 22, 23, 24, and 25, 2024, all of which purportedly occurred while Patient J.K. was hospitalized from July 21, 2024, through July 26, 2024 at Hospital B.

**B. ROBINSON Knowingly Participated in the Fraud Scheme and Laundered the Proceeds of ODA Solutions' Fraudulent Claims**

1. <u>ROBINSON Is the Founder, Owner, and Operator of ODA Solutions.</u>

44. Illinois Secretary of State records show that ROBINSON is the registered incorporator, agent, president, and secretary of ODA Solutions. Illinois Department of Human Services licensure paperwork for ODA Solutions lists ROBINSON as its Chief Executive Officer.

45. According to its website, ODA Solutions is described as a "leading methadone clinic" offering "comprehensive methadone maintenance, counseling, and support services to help individuals overcome opioid addiction."[22] As shown in the

---

[22] More information can be found at https://www.odasolutions.org/methadone-clinic-staff (last visited June 17, 2026).

image below from the "Staff" page of the ODA Solutions website, the only person identified on the "Staff" page is ROBINSON, who is described as ODA Solutions' "Founder/CEO":[23]



**Danny Robinson Founder / CEO**

> 2. ROBINSON Set Up ODA Solutions' Medicaid Billing Accounts and Remained Actively Involved in the Billing Process.

46. Review of Account x6017 also reveals regular payments to Office Ally, a health care technology company that provides cloud-based billing clearinghouse services to submit claims to managed care organizations. Office Ally records obtained by law enforcement show that ROBINSON was the account contact for ODA Solutions and that ROBINSON submitted paperwork to grant access to the account to

---

[23] Law enforcement has compared this photo to ROBINSON's driver's license photo to confirm his identity.

27

individuals associated with a third-party billing company but continued to be one of only three individuals with access to the account. ROBINSON continued to be involved in billing claims for ODA Solutions, as demonstrated by numerous chats ROBINSON had with Office Ally support staff regarding issues related to claims submissions and payments. For example, in August 2025, ROBINSON contacted Office Ally support and requested to add a "status type" in the "patient visit status tab." He was told he could not do so. In September 2025, ROBINSON contacted Office Ally support again, this time seeking assistance for hundreds of rejected claims. In October 2025, ROBINSON asked Office Ally support for a report showing all claim adjustments for 2025. ROBINSON noted that there were "a large volume of claims" and if he wanted to see adjustments it would "take [a] thousand days" if he viewed them one by one.

47. Based on the Office Ally records and my training experience, as the primary contact on the Office Ally account throughout the relevant time period, ROBINSON could access and view claims being submitted through Office Ally reflected in the Office Ally data.

48. On or about May 21, 2026, Judge Appenteng signed a warrant authorizing a search of ROBINSON'S email account, drobinson@odasolutions.org (the "Subject Account") (26 M 349). Based on a review of emails obtained through the search warrant, ROBINSON is using the Subject Account to direct claims billing for ODA Solutions. For example, on or about March 10, 2026, a biller from NEO MD, INC., using the account frank@neomdinc.com, emailed ROBINSON at the Subject

Account to advise that in "newly received billing sheets, the procedure codes H2015 and T1016 are not included for CountyCare patients." In response, ROBINSON directed the NEO MD biller to "add H2015 Wednesday and T1016 Thursday for each [CountyCare] member." Later that same day, ROBINSON, using the Subject Account, emailed the NEO MD biller again and directed him to "retroactively submit[] the same format for all back billing as it relates to councare [sic]" The NEO MD biller agreed to do so and then on March 11, 2026, ROBINSON directed the biller to "bill for the 3 H0004 CODES WEEKLY FOR COUNTY Care almong [sic] with the H2015 & T1016 on Wednesday and Thursday." Finally, ROBINSON told the biller not to bill for a particular patient that week. He advised to "[r]esume billing her next week. She's in the hospital."

> 3. ROBINSON Was Involved in the Submission of Fake Medical Records and Provider Lists to BCBS-IL and Meridian.

49. As discussed above, on or about June 23, 2025, BCBS-IL notified ROBINSON and Individual B via email of their third review of claims submitted by ODA Solutions. On or about July 1, 2025, BCBS-IL received from ODA Solutions medical records that did not contain any signatures of the purported servicing provider. On or about July 22, 2025, ODA Solutions submitted the signed versions of the requested records to BCBS-IL. Based on emails obtained through the search warrant on the Subject Account, in the days leading up to the July 22, 2025, submission and on the day of the submission itself, there were several emails between ROBINSON, using the Subject Account, and Individual B. For example, on or about July 19, 2025, ROBINSON emailed Individual B directing him to add a list of 20

29

names to "that records request employee roster ASAP." Several of those names appeared as signatories on the requested records that were submitted to BCBS-IL on or about July 22, 2025. According to Intuit records, none of those individuals were ever paid by ODA Solutions.

50. In addition, on or about December 23, 2024, in response to an audit being conducted by Meridian, ROBINSON, using the Subject Account, forwarded an email attaching several patient notes to Individual B, indicating that those records were documentation for the Meridian MH (mental health) audit. According to the email chain, the patient notes were originally sent by Individual F, using an "@odasolutions.org" email account, to ROBINSON, on or about December 12, 2024.[24] One of the attached patient notes was purportedly from a therapy session conducted on July 22, 2024. A review of the metadata of that patient note reveals that the document was created by Individual G[25] on December 11, 2024, several months after the purported date of service.

51. According to emails obtained through the search warrant, ROBINSON directed the creation and modification of therapy notes months or years after the purported date of service. For example, on or about May 7, 2025, at approximately 1:10 p.m., Individual G, using an "@odasolutions.org" email address, sent an email with the subject line "Updated Times for MHT note from 12pm-2pm" to Individual F, who was also using an "@odasolutions.org" email account. Based on my training and

---

[24] Based on the Intuit records, Individual F was a contractor for ODA Solutions.

[25] Based on the Intuit records, Individual G also appears to be a contractor for ODA Solutions.

experience, as well as my review of documents obtained as part of this investigation, I believe the letters "MHT" in the subject line referred to "Mental Health Therapy." In the email, Individual G wrote: "[Individual F], can you please look them over, based it on the time that Danny wanted from 12pm to 2pm or MHT notes. If there is anything that needs to be changed let me know and I'll do it. There is a total count of 22 MHT notes." Later that same, at approximately 1:43 p.m., Individual F forwarded the email to ROBINSON at the Subject Account. On or about May 9, 2025, at approximately 12:25 a.m., Individual F again forwarded the same email chain to ROBINSON at the Subject Account. The forwarded email attached a total of 22 Microsoft Word documents, each purporting to be a separate "MHT note" for a particular date of service for a particular patient, going back as early as January 12, 2024. Based on my review of the metadata associated with the therapy note purportedly for a date of service on January 12, 2024, the document was created on or about May 6, 2025 by Individual G, and last modified on or about May 7, 2025 (the date of the email chain) by "ODA Solutions."

    4.    <u>ROBINSON Diverted the Majority of the Proceeds of the Scheme to His and Individual A's Personal Use.</u>

52. According to bank records, ROBINSON opened Account x6017 on behalf of ODA Solutions on or about January 24, 2023. The signature card identified ROBINSON as the "President" of ODA Solutions and the sole signatory on Account x6017. On or about February 7, 2025, ROBINSON signed a second signature card for Account x6017, this time as the "Owner" of ODA Solutions. The second signature card

also purports to bear the signature of Individual A, as the "Vice President" of ODA Solutions.

53. As noted above, Account x6017 is the account through which ODA Solutions made payroll payments for the approximately 10 individuals that ODA Solutions identified as providers to BCBS-IL and as employees or independent contractors to Intuit. As also noted above, Account x6017 was the account through which ODA Solutions received all of the approximately $75,171,733 in payments from the MCOs for services purportedly rendered by its providers. As the only person who has been a signatory on Account x6017 through February 2025, ROBINSON had access to information about the volume of payments received from the MCOs and the volume of payments made to employees and contractors throughout the scheme.

54. During the same time period, ROBINSON engaged in money movement out of the account, consistent with money laundering. ROBINSON depleted approximately $79,692,615 from Account x6017 via: (a) transfers totaling approximately $44,661,747, which included approximately $27,356,000 to brokerage accounts and approximately $10,133,070 to a car dealership ROBINSON set up with Individual A; (b) large purchases totaling approximately $7,362,574, which included approximately $4,109,384 for real estate and home improvements, $1,332,167 for jewelry, watches, and other luxury items, and $616,022 for vehicles; (c) payments to entities and individuals totaling approximately $9,785,600; (d) cash withdrawals totaling approximately $2,497,216; (e) credit card payments totaling approximately $3,460,602; and (f) debit card purchases totaling approximately $235,333. Based on

32

my training and experience, expenditures reflected in Account x6017 are inconsistent with what would be expected for a legitimate methadone clinic providing behavioral health counseling and therapy services because a legitimate clinic would need to pay providers for providing services and could not divert the majority of proceeds for personal use.

55.     Once funds were transferred from Account x6017 to accounts in the name of Car Dealership A, Individual A used the funds to purchase luxury vehicles and at least one yacht. For example, according to bank records, on or about May 7, 2025, Car Dealership A made a payment of approximately $73,845 to Car Dealership B. According to records obtained from Car Dealership B, on or about April 29, 2025, Car Dealership A made a purchase of a black 2020 Bentely Continental GT V8 with a Vehicle Identification Number ending x5970 for $73,845. As shown in the below excerpt from the website for Car Dealership A, that same Bentley Continental GT V8 is available for sale from Car Dealership A for $84,995:



56.     Additionally, according to bank records, on or about January 9, 2025, Car Dealership A made a payment of approximately $29,000 to United Yacht Sales, LLC. On or about February 18, 2025, Car Dealership A made a second payment of approximately $251,745 to United Yacht Sales, LLC.  According to records obtained from United Yacht Sales, LLC, on or about February 21, 2025, Car Dealership A closed on a 2009 Azimut 43, 42-foot 4-inch, yacht, named Maid Marion with hull number xH809 for $280,745.

57.     In response to a subpoena, Suntex Marinas provided records indicating that Individual A's boat "Butt Nekkid" bearing hull number xH809, is located at Slip H-26 at the 31st Street Harbor in Chicago, as pictured below.  The correspondence further provides that Individual A is associated with Car Dealership A.

34



### C.     Count One - 18 U.S.C. § 1347

58.     The claims data from CountyCare shows that on or about September 6, 2024, ODA Solutions submitted a claim for eight 15-minute units of behavioral health counseling and therapy (HCPCS code H0004) purportedly rendered to beneficiary B.S. on or about August 24, 2024. Office Ally records show that this claim was submitted through Office Ally and that ROBINSON was the main contact on the Office Ally account. No other individuals associated with ODA Solutions appear as contacts on the Office Ally account. The only other individuals who appear to have access to the Office Ally account besides ROBINSON are two billers from NEO MD, INC.  Emails, like the ones on March 10 and 11, 2026, discussed above, demonstrate that ROBINSON directs claims billing at ODA Solutions. As described above, based

on hospital records, beneficiary B.S. was hospitalized at Hospital A from August 19, 2024, until his death on August 25, 2024.

### D. Count Two - 18 U.S.C. § 1957

59. On or about July 15, 2024, while ROBINSON was the sole signatory on Account x6017, ROBINSON initiated one transfer of $500,000, and two transfers of $250,000 each (for a total of $1,000,000) from Account x6017 to a Merrill Lynch brokerage account ending x77U73, held in the name of ODA Solutions. According to bank records, the available balance in Account x6017 as of July 12, 2024, the last business day before the transfers, was approximately $7,120,730. According to those same bank records, in the approximately five months preceding July 15, 2024, from on or about February 6, 2024, through on or about July 12, 2024, Account x6017 received approximately $8,800,795 in credits, approximately $8,719,957 of which came in the form of payments from the MCOs, meaning only $80,838 in credits during that time period came from sources other than direct payments from the MCOs. According to the bank records, the available balance in Account x6017 as of February 6, 2024, was only approximately $7,207.

60. Based on the fact that the available balance as of February 6, 2024, was only approximately $7,207, and the fact that all but $80,838 of the subsequent credits to Account x6017 leading up to the $1 million in transfers to the Merrill Lynch account ending x77U73 on or about July 15, 2024, came in the form of payments from the MCOs, no more than $88,045 of any of the three transfers could have come from a source other than payments from the MCOs. With respect to the $500,000 transfer from Account x6017 to Merrill Lynch account ending x77U73 on or about July 15,

2024, for example, at least approximately $411,955 could only have been funded with payments from the MCOs.

61.     As set forth above, the vast majority of the MCO payments to ODA Solutions, including the payments that funded at least $411,955 of the $500,000 that ROBINSON transferred from Account x6017 to the Merrill Lynch account ending x77U73 on or about July 15, 2024, were based on fraudulent claims for therapy and counseling services that were never provided because ODA Solutions: (a) regularly submitted claims for therapy and counseling services that could not possibly have been rendered by the providers on ODA Solutions' payroll and (b) regularly submitted claims for outpatient services purportedly provided to patients who in fact were hospitalized. As further evidenced by the submission of: (a) claims for services that were not provided during dates when ODA Solutions was under surveillance; (b) lists of purported providers to BCBS-IL that included dozens of people who were never on ODA Solutions' payroll; and (c) dozens of fake visit notes to BCBS-IL for every patient for whom BCBS-IL requested records as part of BCBS-IL's third review of ODA Solutions' claims, the healthcare fraud scheme is ongoing and ROBINSON continues to receive funds that are the proceeds of that fraud scheme.

## III.    CONCLUSION

62.     In summary, according to witnesses and records obtained by law enforcement, from on or about December 11, 2023, through the present, ROBINSON caused false and fraudulent claims to be submitted by ODA Solutions to the MCOs for purported behavioral health counseling and therapy services. The fraudulent claims include a claim submitted by ODA Solutions to CountyCare on or about

37

September 6, 2024, for two hours of behavioral health counseling and therapy services purportedly provided to beneficiary B.S. on or about August 24, 2024, for which CountyCare paid ODA Solutions $242.08.

63.     Further, according to records obtained by law enforcement, on or about July 15, 2024, ROBINSON transferred funds in the amount of $500,000 from the account ending in x6017 at Bank of America and to the Account ending x77U73 at Merrill Lynch, such property having been derived from a specified unlawful activity, namely, health care fraud, in violation of Title 18, United States Code, Section 1347.

64.     Based on the facts described above, I respectfully submit there is probable cause to believe that DANIEL J. ROBINSON committed health care fraud, in violation of Title 18, United States Code, Section 1347 and money laundering, in violation of Title 18, United States Code, Section 1957.

FURTHER AFFIANT SAYETH NOT.



Digitally signed by CURT HARALSON
Date: 2026.06.18 09:27:20 -05'00'

Curt Haralson
Special Agent
Federal Bureau of Investigation

Sworn to and affirmed by telephone 18th day of June, 2026

Honorable Albert Berry III
United States Magistrate Judge

38